**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| COLLEGE PRODUCTS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 23cv4002 |
| | § | |
| INTIRION CORPORATION, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff College Products, Inc. (hereinafter "College Products") seeks declaratory judgment that (1) College Products does not infringe, directly or indirectly, United States Patent Nos. 9,657,974 ("the '974 Patent"), 9,791,206 ("the '206 Patent"), 10,495,374 ("the '374 Patent"), and 11,274,876 ("the '876 Patent") (collectively, the "Asserted Patents") and (2) the Asserted Patents are invalid.

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment arising under 28 U.S.C. §§ 2201 and 2202 and the Patent Laws of the United States, Title 35 of the United States Code.  College Products seeks declaratory judgment that College Products does not infringe, directly or indirectly, the Asserted Patents and that the Asserted Patents are invalid.

2.      College Products seeks this relief because Intirion Corporation ("Intirion") filed a complaint on May 6, 2022, against College Products for patent infringement in an improper venue – the Western District of Texas Waco Division (the "Intirion Complaint").[1]  *See Intirion*

---

[1] A true and correct copy of the Intirion Complaint is attached as Exhibit 1.  The complaint's exhibits have been omitted.

1

*Corp. v. College Products, Inc.*, No. 6:22-cv-00459-ADA (W.D. Tex.).

3.　　In the Intirion Complaint, Intirion alleges that College Products has infringed the Asserted Patents by making, using, selling, offering for sale, leasing, offering for and/or importing certain small space appliances, such as microwaves, mini refrigerators, and/or microwave and refrigerator combinations, under its trademarks MicroChill and/or MicroChill 3.2 (the "MicroChill Products").　Intirion Complaint ¶¶18, 23.

4.　　College Products filed a motion to dismiss that lawsuit, explaining venue is improper for at least the following reasons: (1) College Products is an Iowa company; (2) College Products does not have or maintain a place of business in the Western District of Texas; and (3) none of the alleged acts of infringement occurred in the Western District of District. College Products has repeatedly raised the issue of improper venue with Intirion to no avail.

5.　　Upon information and belief, Intirion has also made statements to College Products' customers and potential customers that (1) College Products infringes the Asserted Patents and (2) if customers do business with College Products, the customers will have to buy the products again from Intirion due to the alleged infringement.

6.　　Intirion's lawsuit and improper statements have placed a cloud over College Products and its MicroChill Products, has injured, and is injuring College Products' business and business relationships.　Thus, an actual, concrete, justiciable, and immediate controversy exists between College Products and Intirion.　As such, College Products brings this case to resolve the controversy raised by Intirion, and to clear the air and settle any doubt as to the legitimacy of its business and its MicroChill Products.

## **PARTIES**

7.　　College Products is an Iowa corporation with its principal place of business at

2

1400 W. 1st Street, Sioux City, IA 51103.

8.     Upon information and belief, Intirion, dba MicroFridge, is a Delaware corporation with its principal place of business at 2 Annette Road, Suite 3, Foxboro, MA, 02035.

## JURISDICTION AND VENUE

9.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §2201 *et. seq.* and under the Patent Laws of the United States, 35 U.S.C. §100 *et. seq.*

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgment claims arising under the Patent Laws of the United States pursuant to 28 U.S.C. §§1331, 1338, 2201, and 2202.  Jurisdiction is also proper under 28 U.S.C. §1332 because College Products and Intirion are citizens of different states, and the value of the controversy exceeds $75,000.

11.     The Court has personal jurisdiction over Intirion because Intirion's conduct in this District forms the basis for College Products' declaratory judgment claims.  Specifically, on May 6, 2022, Intirion filed a patent infringement lawsuit against College Products in the improper venue of the Western District of Texas.  After filing the lawsuit, Intirion did not immediately serve a summons and the Intirion Complaint on College Products.  Instead, on or around May 20, 2022, it sent a letter to College Products at its headquarters located in this District in Sioux City, Iowa.[2]  In the letter, Intirion accused College Products of infringing the Asserted Patents and provided College Products a courtesy copy of its already filed Intirion Complaint.  Intirion made clear it would formally serve the complaint on College Products and begin the litigation process if College Products refused to enter into a patent license agreement and compensate Intirion for

---

[2] A true and correct copy of that letter is attached as Exhibit 2.

3

alleged past infringement. Ex. 2 at 1–2. Intirion gave College Products 14 days to respond to its letter before Intirion would move forward with its litigation. *Id.* at 2. Further, upon information and belief, Intirion has contacted College Products' customers and/or potential customers, made meritless allegations of infringement against College Products, and harmed College Products' business.

12. The Court also has personal jurisdiction over Intirion because, on information and belief, Intirion has established minimum contacts within this District such that the exercise of jurisdiction over Intirion would not offend traditional notions of fair play and substantial justice. Specifically, upon information and belief, Intirion is registered with the Iowa Secretary of State to transact business in the State of Iowa, has made contracts with residents of Iowa, and has done and continues to do business in the State of Iowa, at least with (1) Collegiate Concepts, Inc. ("Collegiate Concepts"), located in the Southern District of Iowa in Huxley, Iowa; (2) Iowa State University, located in the Southern District of Iowa in Ames, Iowa; (3) Loras College, located in this District in Dubuque, Iowa; (4) Northwestern College located in this District in Orange City, Iowa; (5) Upper Iowa University located in this District in Fayette, Iowa; and (6) hotels located in this District and the Southern District of Iowa. Further, Intirion purposefully directs into the State of Iowa, including in this District, commerce, goods and/or services, including its MicroFridge Products, either directly and/or through a distributor.

13. As one example, upon information and belief, Intirion, dba MicroFridge, designs, manufactures, offers to sell, and sells small-spaced appliances under the brand name MicroFridge (the "MicroFridge Products"). Intirion purportedly owns trademark registrations

4

for MicroFridge.[3]  Upon information and belief, Intirion shipped several MicroFridge Products to Iowa State University in 2022.

14.     As another example, upon information and belief, Collegiate Concepts is an Iowa corporation located at 101 Campus Drive, Huxley, Iowa 50124.  As shown in the photo below, upon information and belief, CCI is Intirion's "Premier Master Distributor" of Intirion's MicroFridge Products, including in Iowa.  *See* https://www.collegiateconcepts.net/ (reproduced in part below).  Upon information and belief, Intirion has a distributor agreement with Collegiate Concepts.



15.     Upon information and belief, Collegiate Concepts offers to sell, sells, and/or leases MicroFridge Products to students at Iowa State University on behalf of Intirion.  *See* https://www.collegiateconcepts.net/schools/iowa-state-university/.  It has purportedly "leased over 10,000 MicroFridges to Iowa State University students over the last 15 years."  *Id.*  Exhibit

---

[3] *See, e.g.*, a true and correct copy of a Certificate of Registration downloaded from the United States Patent and Trademark Office for one of Intirion's MicroFridge trademarks is attached as Exhibit 3.

4 is a webpage printout showing the availability of the MicroFridge Products for lease to Iowa State University students.

16.    As yet another example, upon information and belief, Exhibit 5 is a webpage printout showing the availability of the MircoFridge Products for lease to Loras College students. Ex. 5 at 1 (Loras College student talking about his MicroFridge).

17.    As another example, upon information and belief, Intirion offers to sell, sells, and/or leases to students at Northwestern College.  Upon information and belief, Exhibit 6 is Northwestern College's 2020-2021 Student Handbook and it states that MicroFridge Products are allowed in college housing.  Ex. 6 at 32.

18.    As another example, upon information and belief, Intirion offers to sell, sells, and/or leases to students at Upper Iowa University.  Upon information and belief, Exhibit 7 is a webpage printout showing the availability of the MircoFridge Products for lease to Upper Iowa University students.  Ex. 7 at 1.

19.    As yet example, upon information and belief, Intirion offers to sell, sells, and/or leases MicroFridge Products to hotel brands, including Choice Hotels, Wyndham Hotel Group, Best Western Hotels & Resorts, IHG Hotels & Resorts, Marriott, Hyatt House, Hyatt Place, Motel 6, and Hilton Garden Inn.  Upon information and belief, Exhibit 8 is a product guide for MicroFridge; in the guide, MicroFridge (i.e., Intirion's doing business as name) is identified as a vendor of MicroFridge products for these hotel brands.  *See* Ex. 8 at 2.  Upon information and belief, those hotel brands have hotels located in this District and the Southern District of Southern District.

20.    Venue for this declaratory judgment action is proper in this District pursuant to 28 28 U.S.C. §1391 because Intirion resides in this District for the purposes of this statute.  Under

28 U.S.C. §1391(b)(1), venue is proper in any judicial district where a defendant resides. An entity with the capacity to sue and be sued, such as Intirion, is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question under 28 U.S.C. §1391(c). As discussed above in ¶¶ 11–19 (incorporated herein by reference), Intirion is subject to personal jurisdiction with respect to this action in the Northern District of Iowa, and thus, for purposes of this action, Intirion resides in the Northern District of Iowa and venue is proper under 28 U.S.C. §1391.

21.     Venue for this declaratory judgment action is also proper in this District pursuant to 28 U.S.C. §1391 because College Products, the plaintiff, resides in this District. As discussed above in ¶7 (incorporated herein by reference), College Products' principal place of business is located in this District.

22.     Venue for this declaratory judgment action is also proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to College Products' claim occurred in this District. *See supra* at ¶11 (incorporated herein by reference).

23.     Venue for this declaratory judgment action is also proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of property that is the subject of this action is situated in this District. As discussed above in ¶¶2–3 and below in ¶¶38, 50, 60, 75, 85, 99, 109, and 120 (incorporated herein by reference), Intirion has accused College Products of direct and indirect infringement of the Asserted Patents either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products. By this action, College Products seeks a declaratory judgment that it has not and does not and its MicroChill Products have not and do not infringe any claim of the Asserted Patents and that the Asserted Patents are invalid and thus cannot be asserted against College Products or its MicroChill

Products.  MicroChill Products are assembled and stored in this District at College Products'

headquarters located in this District.  *See supra* at ¶7 (incorporated herein by reference).

24.     Venue in this District is also proper under 28 U.S.C. §1391(d) because (i)

Intirion's contacts with this District are sufficient to subject it to personal jurisdiction in this

District if it were a separate state (*see supra* at ¶¶11–13, 19–19 (incorporated herein by

reference)) and/or (ii) Intirion's contacts within this District are the most significant compared to

the other district in the State of Iowa (*see supra* at ¶¶11–19 (incorporated herein by reference)).

## <u>COLLEGE PRODUCTS' FACTUAL BACKGROUND</u>

25.     College Products is one of the nation's leading providers of eco-friendly rental,

lease, and sale products to colleges and universities in twenty-seven states, including most of the

Midwest, California, Texas, and Massachusetts.  Its products help students turn their rooms into

homes.  Some of College Products' most popular products are its innovative MicroChill

Products.

26.     As shown in the photos below, College Products' MicroChill Products are

compact combination appliances that may include a refrigerator/freezer and a microwave.  The

microwave has USB charging ports built into it that allow certain electronic devices to be

charged quickly without the need for a wall plug.



*Eco-Friendly Refrigerant

199 kWh
HIGHEST EFFICIENCY
AVAILABLE

MicroChill® Combo
*Cycles Power from Fridge when Microwave is
in use to conserve energy and amp consumption
*Power is restored to fridge even if microwave
door is left open



2.0 Amp    2.0 Amp

USB CHARGING PORTS

Dual USB Charging Station
Conveniently located on the front control panel
for easy access and quick charging.

27.    MicroChill Products have several advantages, including reducing energy

consumption and requiring fewer outlets.  For example, MicroChill Products are Energy Star

rated and UL Certified as a combination appliance.  College Products has worked hard to

9

increase the efficiency of its refrigerator/freezer appliance from 270 kWh to an industry leading 199 kWh. This provides an annual savings of several thousands of dollars in electricity consumption. The MicroChill Products also have an internal switching mechanism that regulates the power so only one of the appliances can draw energy at a time.

28.     The MicroChill Products also have an outlet on the back of the microwave where the fridge is plugged in, making the microwave the only part of the unit that has to be plugged into the wall. As shown in the photo below, the products further include a UL certified Tamper Resistant Strap (TRS™) that prevents students from disconnecting the fridge from the microwave and plugging both into the wall, negating the power saving functions of the combination appliance.



## ASSERTED PATENTS

29.     In the Intirion Complaint, Intirion alleges that it owns by assignment all right, title, and interest in the Asserted Patents, including the right to use and enforce the Asserted Patents.

30.     The '974 Patent states it issued on May 23, 2018, from an application filed on April 25, 2015. The '974 Patent identifies Phillip Emma as the inventor and is titled "Multiple Linked Appliance with Auxiliary Outlet." A copy of the '974 Patent is attached as Exhibit 9.

10

The '974 Patent issued with 22 claims, of which claims 1, 12, and 17 are independent claims and the remaining claims are dependent.

31.     The '206 Patent states it issued on October 17, 2017, from an application filed on April 22, 2016.  The '206 Patent identifies Gregory Allan Thomas Hall and Phillip Emma as inventors and is titled "Multiple Linked Appliance with Auxiliary Outlet."  A copy of the '206 Patent is attached as Exhibit 10.  The '206 Patent issued with 12 claims, of which claims 1, 9 and 11 are independent claims and the remaining claims are dependent.

32.     The '374 Patent states it issued on December 3, 2019, from an application filed on May 19, 2017.  The '374 Patent identifies Gregory Allan Thomas Hall and Phillip Emma as inventors and is titled "Multiple Linked Appliance with Auxiliary Outlet."  A copy of the '374 Patent is attached as Exhibit 11.  The '374 Patent issued with 20 claims, of which claims 1, 9 and 17 are independent claims and the remaining claims are dependent.

33.     The '876 Patent states it issued on March 15, 2022, from an application filed on November 1, 2019.  The '876 Patent identifies Gregory Allan Thomas Hall, Phillip Emma, Jim Estill, Bryan Stuart Cunningham, and Dennis O'Brien as inventors and is titled "Multiple Linked Appliance with Auxiliary Outlet."  A copy of the '876 Patent is attached as Exhibit 12.  The '876 Patent issued with 28 claims, of which claims 1,12, and 21 are independent claims and the remaining claims are dependent.

34.     The Asserted Patents were all filed between 2014 and 2019 as continuations-in-part ("CIPs") purportedly claiming priority to a parent application, U.S. Patent Application No. 12/317,632, which was filed on December 23, 2008, and published July 30, 2009, as U.S. Publication No. 2009/0188911 ("the '911 Patent Pub.").

35.     The '911 Patent Pub. discloses a microwave-refrigerator combination with a

microprocessor that manages power supply between the microwave, refrigerator, and an auxiliary outlet on the microwave.

36.     The '911 Patent Pub. published before the earliest priority date of the claims of the Asserted Patents, and is thus prior art to all claims of the Asserted Patents.

<u>COUNT I</u>

**(Declaratory Judgment of Invalidity of the '974 Patent)**

37.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

38.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '974 Patent either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products.  Intirion Complaint ¶¶50-57.

39.     The claims of the '974 Patent are invalid and unenforceable for failure to comply with one or more of the requirements of patentability as specified in 35 U.S.C. §§ 1 *et seq.*, including, without limitation, 35 U.S.C. §103.

40.     As an example, the '974 Patent purportedly issued from an application that was filed on April 25, 2015.  That application is a CIP purportedly claiming priority to the '911 Patent Pub. ("the '974 CIP Application").

41.     New material was disclosed in the '974 CIP Application.  That new material includes a USB port on a microwave.

42.     The claims of the '974 Patent recite a microwave-refrigerator combo where the microwave includes a USB port.  Because the claims of the '974 Patent claim material that was first disclosed in the '974 CIP Application (i.e., USB port), the earliest **priority** date for those

12

claims is the filing date of the '974 CIP Application, or April 25, 2015. Because the '911 Patent Pub. was published years before this date, it is prior art to the '974 Patent.

43.     As discussed above, the '911 Patent Pub. discloses a microwave-refrigerator combination with a microprocessor that manages power supply between the microwave, refrigerator, and an auxiliary outlet on the microwave.

44.     Adding a USB port to appliances, like the ones disclosed in the '911 Patent Pub., was known and obvious. As an example, USB ports have been used in a microwave long before the '974 Patent was filed. *See, e.g.*, Chun, U.S. Patent Pub. No. 2004/0060932. Thus, the mere addition of a USB port in the '974 Patent to a prior art microwave-refrigerator combination is obvious.

45.     For at least the foregoing reasons, the '974 Patent is invalid over the prior art.

46.     College Products has been injured and damaged by Intirion's allegations that it infringes an invalid patent.

47.     Declaratory relief is both appropriate and necessary to establish (1) College Products has not and does not infringe any valid claim of the '974 Patent and (2) the '974 Patent is invalid and thus cannot be asserted against College Products.

48.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties regarding the invalidity of the '974 Patent. College Products therefore seeks and is entitled to a declaratory judgment that the claims of the '974 Patent are invalid and/or unenforceable.

<u>**COUNT II**</u>

**(Declaratory Judgment of Non-Infringement of the '974 Patent)**

49.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

50.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '974 Patent either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products.  Intirion Complaint ¶¶50-57.  Intirion does not infringe the '974 Patent for several reasons.

51.     As one example, all independent claims (i.e., claims 1, 12, and 17) of the '974 Patent recite the following limitations: "second power supply outlet connected to the source of power through the control circuit" / "second power supply outlet operatively connected to the source of power through operation of the control circuit."  The MicroChill Products do not satisfy these claim limitations.

52.     As another example, independent claims 1, 2, and 17 of the '974 Patent recite the following claim limitations: "sensing components connected to sense current draw at the second power supply outlet, and generating signals indicative thereof" / "sensors connected to sense current demanded at the second power supply outlet, and generating signals indicative thereof."  The MicroChill Products do not satisfy these claim limitations.

53.     As yet another example, independent claims 1, 2, and 17 of the '974 Patent recite the following claim limitation: "control circuit…configured to enable or disable power to the microwave oven, the first power supply outlet, and the second power supply outlet."  The MicroChill Products do not satisfy this claim limitation.

14

54.     Because College Products' MicroChill Products do not meet each and every claim limitation of independent claims 1, 12, and 17 the '974 Patent, those products do not meet each and every claim limitation of the dependent claims 2-11, 13-16, and 18-22 of the '974 Patent.

55.     For at least the foregoing reasons, College Products' MicroChill Products do not infringe, directly or indirectly, any claim of the '974 Patent either literally or under the doctrine of equivalents.

56.     For at least the foregoing reasons, College Products' customer's use of the MicroChill Products does not infringe, directly or indirectly, any claim of the '974 Patent either literally or under the doctrine of equivalents.

57.     College Products also does not induce or contribute to the infringement of the '974 Patent for at least the reasons stated above and because there is no direct infringement of the '974 Patent, either literally or under the doctrine of equivalents.

58.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties about the alleged infringement of the '974 Patent. Thus, College Products seeks and is entitled to a declaratory judgment that it has not and does not and its MicroChill Products have not and do not infringe any claim of the '974 Patent. Such relief is necessary and appropriate at this time to resolve the parties' dispute.

## COUNT III

### (Declaratory Judgment of Invalidity of the '206 Patent)

59.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '206 Patent either literally or under the

doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products.  Intirion Complaint ¶¶41-48.

61.     The claims of the '206 Patent are invalid and unenforceable for failure to comply with one or more of the requirements of patentability as specified in 35 U.S.C. §§ 1 *et seq.*, including, without limitation, 35 U.S.C. §§103 and/or 112.

62.     As an example, the '206 Patent purportedly issued from an application that was filed on April 22, 2016.  That application is a CIP purportedly claiming priority to the '911 Patent Pub. ("the '206 CIP Application").

63.     New material was disclosed in the '206 CIP Application.  That new material includes a smoke sensor.  Because the claims of the '206 Patent claim material that was first disclosed in the '206 CIP Application (i.e., smoke sensor), the earliest **priority** date for those claims is the filing date of the '206 CIP Application, or April 22, 2016.  Because the '911 Patent Pub. was published years before this date, it is prior art to the '206 Patent.

64.     As discussed above, the '911 Patent Pub. discloses a microwave-refrigerator combination with a microprocessor that manages power supply between the microwave, refrigerator, and an auxiliary outlet on the microwave.

65.     Adding a smoke sensor to appliances, like the ones disclosed in the '911 Patent Pub., was known and obvious.  As an example, smoke sensors have been used in microwaves since at least as early as 2007.  *See, e.g.*, *ISDU: integrated smoke detector unit for commercial microwave ovens*, IRis, Northeastern University (April 17, 2007).  Further, upon information and belief, microwaves have had smoke sensors since the 1990s.

66.     College Products has been offering its MicroChill Products with smoke sensors since 2013.

67.     For at least the foregoing reasons, the '206 Patent is invalid over the prior art.

68.     Claims 9 and 11 of the '206 Patent recite the following claim limitation: the smoke sensor sensing smoke indicative of or corresponding to a "dangerous condition."

69.     Neither the '206 Patent specification nor the claims identify what qualifies as a "dangerous condition." This is an unequivocally ambiguous claim term with no identifiable boundary.

70.     For at least the foregoing reasons, at least claims 9 and 11, and dependent claims 10 and 12 of the '206 Patent are invalid for indefiniteness.

71.     College Products has been injured and damaged by Intirion's allegations that it infringes an invalid patent.

72.     Declaratory relief is both appropriate and necessary to establish (1) College Products has not and does not infringe any valid claim of the '206 Patent and (2) the '206 Patent is invalid and thus cannot be asserted against College Products.

73.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties regarding the invalidity of the '206 Patent. College Products therefore seeks and is entitled to a declaratory judgment that the claims of the '206 Patent are invalid and/or unenforceable.

## COUNT IV

**(Declaratory Judgment of Non-Infringement of the '206 Patent)**

74.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

75.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '206 Patent either literally or under the

17

doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products. Intirion Complaint ¶¶41-48. Intirion does not infringe the '206 Patent for several reasons.

76.     As one example, all independent claims (i.e., claims 1, 9, and 11) of the '206 Patent recite the following limitation: a smoke sensor "configured to [be] reset" when there is no further smoke detection. The MicroChill Products do not satisfy this claim limitation.

77.     As another example, independent claim 1 of the '206 Patent recites the following claim limitation: "at least one power control circuit…operative to cause electrical power to be selectively delivered to the microwave element". The MicroChill Products do not satisfy this claim limitation.

78.     As yet another example, independent claim 1 of the '206 Patent recites the following claim limitation: "at least one sensor emitter and at least one sensor receiver." The MicroChill Products do not satisfy this claim limitation.

79.     Because College Products' MicroChill Products do not meet each and every claim limitation of independent claims 1, 9, and 11 the '206 Patent, those products do not meet each and every claim limitation of the dependent claims 2-8, 10, and 12 of the '206 Patent.

80.     For at least the foregoing reasons College Products' MicroChill Products do not infringe, directly or indirectly, any claim of the '206 Patent either literally or under the doctrine of equivalents.

81.     For at least the foregoing reasons, College Products' customer's use of the MicroChill Products does not infringe, directly or indirectly, any claim of the '206 Patent either literally or under the doctrine of equivalents.

82.     College Products also does not induce or contribute to the infringement of the

18

'206 Patent for at least the reasons stated above and because there is no direct infringement of the '206 Patent, either literally or under the doctrine of equivalents.

83.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties about the alleged infringement of the '206 Patent.  Thus, College Products seeks and is entitled to a declaratory judgment that it has not and does not and its MicroChill Products have not and do not infringe any claim of the '206 Patent.  Such relief is necessary and appropriate at this time to resolve the parties' dispute.

## COUNT V

### (Declaratory Judgment of Invalidity of the '374 Patent)

84.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

85.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '374 Patent either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products. Intirion Complaint ¶¶ 32-39.

86.     The claims of the '374 Patent are invalid and unenforceable for failure to comply with one or more of the requirements of patentability as specified in 35 U.S.C. §§ 1 *et seq.*, including, without limitation, 35 U.S.C. §§103 and/or 112.

87.     As an example, like the claims of the '206 Patent, the claims of the '374 Patent recite a smoke sensor.  Because the claims of the '374 Patent claim material that was first disclosed in the specification in April 2016 (i.e., smoke sensor), the earliest **priority** date for those claims is April 22, 2016.  Because the '911 Patent Pub. was published years before this date, it is prior art to the '374 Patent.

19

88.     As discussed above, the '911 Patent Pub. discloses a microwave-refrigerator combination with a microprocessor that manages power supply between the microwave, refrigerator, and an auxiliary outlet on the microwave.

89.     As further discussed above, adding a smoke sensor to appliances, like the ones disclosed in the '911 Patent Pub., was known and obvious.  As an example, smoke sensors have been used in microwaves since at least as early as 2007.  *See, e.g.*, *ISDU: integrated smoke detector unit for commercial microwave ovens*, IRis, Northeastern University (April 17, 2007).  Further, upon information and belief, microwaves have had smoke sensors since the 1990s.

90.     College Products has been offering its MicroChill Products with smoke sensors since 2013.

91.     For at least the foregoing reasons, the '374 Patent is invalid over the prior art.

92.     Claims 9 and 17 of the '374 Patent recite the following claim limitation: the smoke sensor sensing smoke indicative of or corresponding to a "dangerous condition."

93.     Neither the '374 Patent specification nor the claims identify what qualifies as a "dangerous condition."  This is an unequivocally ambiguous claim term with no identifiable boundary.

94.     For at least the foregoing reasons, at least claims 9 and 17, and dependent claims 10–16 and 18–20 of the '374 Patent are invalid for indefiniteness.

95.     College Products has been injured and damaged by Intirion's allegations that it infringes an invalid patent.

96.     Declaratory relief is both appropriate and necessary to establish (1) College Products has not and does not infringe any valid claim of the '374 Patent and (2) the '374 Patent is invalid and thus cannot be asserted against College Products.

97.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties regarding the invalidity of the '374 Patent.  College Products therefore seeks and is entitled to a declaratory judgment that the claims of the '374 Patent are invalid and/or unenforceable.

## COUNT VI

### (Declaratory Judgment of Non-Infringement of the '374 Patent)

98.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

99.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '374 Patent either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Products. Intirion Complaint ¶¶ 32-39.  Intirion does not infringe the '374 Patent for several reasons.

100.     As one example, all independent claims (i.e., claims 1, 9, and 17) of the '374 Patent recite the following limitation: a smoke sensor "configured to [be] reset" when there is no further smoke detection.  The MicroChill Products do not satisfy this claim limitation.

101.     As another example, independent claim 1 of the '374 Patent recites the following claim limitation that: "at least one power control circuit…operative to cause electrical power to be selectively delivered to the microwave element."  The MicroChill Products do not satisfy this claim limitation.

102.     As yet another example, independent claim 1 of the '374 Patent recites the following claim limitation: "at least one sensor emitter and at least one sensor receiver."  The MicroChill Products do not satisfy this claim limitation.

21

103.    Because College Products' MicroChill Products do not meet each and every claim limitation of independent claims 1, 9, and 17 the '374 Patent, those products do not meet each and every claim limitation of the dependent claims 2-8, 10-16, and 18-20 of the '374 Patent.

104.    For at least the foregoing reasons, College Products' MicroChill Products do not infringe, directly or indirectly, any claim of the '374 Patent either literally or under the doctrine of equivalents.

105.    For at least the foregoing reasons, College Products' customer's use of the MicroChill Products does not infringe, directly or indirectly, any claim of the '374 Patent either literally or under the doctrine of equivalents.

106.    College Products also do not induce or contribute to the infringement of the '374 Patent for at least the reasons stated above and because there is no direct infringement of the '374 Patent, either literally or under the doctrine of equivalents.

107.    As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties about the alleged infringement of the '374 Patent.  Thus, College Products seeks and is entitled to a declaratory judgment that it has not and does not and its MicroChill Products have not and do not infringe any claim of the '374 Patent.  Such relief is necessary and appropriate at this time to resolve the parties' dispute.

## COUNT VII

### (Declaratory Judgment of Invalidity of the '876 Patent)

108.    Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

109.    In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '876 Patent either literally or under the

22

doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Product. Intirion Complaint ¶¶23-30.

110. The claims of the '876 Patent are invalid and unenforceable for failure to comply with one or more of the requirements of patentability as specified in 35 U.S.C. §§ 1 *et seq.*, including, without limitation, 35 U.S.C. §103.

111. As an example, like the claims of the '206 Patent, the claims of the '876 Patent recite a smoke sensor. Because the claims of the '876 Patent claim material that was first disclosed in the specification in April 2016 (i.e., smoke sensor), the earliest **priority** date for those claims is April 22, 2016. Because the '911 Patent Pub. was published years before this date, it is prior art to the '876 Patent.

112. As discussed above, the '911 Patent Pub. discloses a microwave-refrigerator combination with a microprocessor that manages power supply between the microwave, refrigerator, and an auxiliary outlet on the microwave.

113. As further discussed above, adding a smoke sensor to appliances, like the ones disclosed in the '911 Patent Pub., was known and obvious. As an example, smoke sensors have been used in microwaves since at least as early as 2007. *See, e.g.*, *ISDU: integrated smoke detector unit for commercial microwave ovens*, IRis, Northeastern University (April 17, 2007). Further, upon information and belief, microwaves have had smoke sensors since the 1990s.

114. College Products has been offering its MicroChill Products with smoke sensors since 2013.

115. For at least the foregoing reasons, the '876 Patent is invalid over the prior art.

116. College Products has been injured and damaged by Intirion's allegations that it infringes an invalid patent.

23

117.     Declaratory relief is both appropriate and necessary to establish (1) College Products has not and does not infringe any valid claim of the '876 Patent and (2) the '876 Patent is invalid and thus cannot be asserted against College Products.

118.     As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties regarding the invalidity of the '876 Patent.  College Products therefore seeks and is entitled to a declaratory judgment that the claims of the '876 Patent are invalid and/or unenforceable.

## COUNT VIII

### (Declaratory Judgment of Non-Infringement of the '876 Patent)

119.     Plaintiff incorporates and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

120.     In the Intirion Complaint against College Products, Intirion accused College Products of direct and indirect infringement of the '876 Patent either literally or under the doctrine of equivalents, citing College Products' sale and customer use of the MicroChill Product.  Intirion Complaint ¶¶23-30.  Intirion does not infringe the '876 Patent for several reasons.

121.     As one example, independent claims 1 and 21 of the '876 Patent recite the following limitations: "at least one power control circuit…in operative electrical connection with the microwave oven and the refrigerator" / "refrigerator is in operative connection with the at least one electrical power control circuit."  The MicroChill Products do not satisfy these claim limitations.

122.     As another example, independent claims 1 and 21 of the '876 Patent recite the following limitations: "smoke sensor…in operative connection with the at least one power

24

control circuit" / "smoke sensor is in operative connection with the at least one electrical power control circuit."  The MicroChill Products do not satisfy these claim limitations.

123.    As yet another example, independent claims 1 and 21 of the '876 Patent recite the following limitations: enabling the microwave "prior to the set end time based on the sensed level of smoke" / "prior to the set end time due to sensing the amount of smoke."  The MicroChill Products do not satisfy these claim limitations.

124.    As further example, independent claim 12 of the '876 Patent recites the following limitation: "safe."  The MicroChill Products do not satisfy this claim limitation.

125.    Because College Products' MicroChill Products do not meet each and every claim limitation of independent claims 1, 12, and 21 the '876 Patent, those products do not meet each and every claim limitation of the dependent claims 2-11, 13-20, and 21-28 of the '876 Patent.

126.    For at least the foregoing reasons, College Products' MicroChill Products do not infringe, directly or indirectly, any claim of the '876 Patent either literally or under the doctrine of equivalents.

127.    For at least the foregoing reasons. College Products' customer's use of the MicroChill Products does not infringe, directly or indirectly, any claim of the '876 Patent either literally or under the doctrine of equivalents.

128.    College Products also do not induce or contribute to the infringement of the '876 Patent for at least the reasons stated above and because there is no direct infringement of the '876 Patent, either literally or under the doctrine of equivalents.

129.    As set forth above, an actual, concrete, justiciable, and immediate controversy exists between the parties about the alleged infringement of the '876 Patent.  Thus, College Products seeks and is entitled to a declaratory judgment that it has not and does not and its

MicroChill Products have not and do not infringe any claim of the '876 Patent. Such relief is necessary and appropriate at this time to resolve the parties' dispute.

## DEMAND FOR JURY TRIAL

College Products hereby requests a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

College Products respectfully requests this Court enter the following relief:

a.      A declaration that the Asserted Patents are invalid;

b.      A declaration that College Products does not infringe and has not infringed, directly or indirectly, any valid and enforceable claim of the Asserted Patents;

c.      A declaration that College Products' customers do not infringe and have not infringed any valid and enforceable claim of the Asserted Patents by using the MicroChill Products;

d.      A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of College Products' attorneys' fees, expenses, and costs; and

e.      An award of all other and further relief as this Court deems just and proper.


CRARY HUFF, P.C.

BY      /s/*David C. Briese*
        David C. Briese, AT0011546
        329 Pierce Street, Ste. 200
        PO Box 27
        Sioux City, Iowa 51102
        Telephone:  (712) 277-4561
        Fax:        (712) 277-4605
        dbriese@craryhuff.com
        ATTORNEYS FOR PLAINTIFF COLLEGE
        PRODUCTS, INC.

26